IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENA HECKER, | ) | |
| | ) | |
| on behalf of herself and others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:21-cv-0349 |
| | ) | |
| v. | ) | |
| | ) | |
| EASY HEALTHCARE CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Jena Hecker ("Plaintiff"), with the consent of Defendant Easy Healthcare Corporation ("Defendant" or "EHC"), respectfully moves this Court for final approval of the class action settlement preliminarily approved by this Court on August 23, 2023 (Doc. 72). Plaintiff hereby provides this Memorandum in Support filed along with her Unopposed Motion for Final Approval of Class Action Settlement.

### I. Introduction

Following two years of contested litigation, which included disclosures, motion practice, and extensive written discovery exchanges, the parties agreed to resolve this breach of contract, common law fraud, and statutory fraud class action with the assistance of experienced mediator Sidney Schenkier, of JAMS. In addition to plaintiff counsel's requested fees, costs and service award, and the costs of the settlement administrator, Defendant EHC will issue a cash payment in the amount of $30 to all participating settlement class members, *i.e.*, those who submitted

1

timely and valid claim forms. This is a fair and reasonable result in light of the risks and uncertainties associated with continued litigation.

For exactly this reason, on August 23, 2023, this Court granted preliminary approval of the settlement. (Doc. 72). In paragraphs 4 and 5 of its Order, the Court explained its reasoning as follows:

> The Settlement appears to be fair, reasonable, and adequate. It is in the best interests of the Premom Consumer Class and should be preliminarily approved. This is true especially in the light of the benefits to the settlement class accruing therefrom; the substantial discovery and investigation conducted by Class Counsel prior to the proposed Settlement; the complexity, expense, risks, and probable protracted duration of further litigation; and given the financial condition of EHC, and the Plaintiff's ultimate ability to collect.

> The Court has reviewed the terms and conditions of the Parties' Settlement, including the monetary relief provisions, the Plan of allocation, the Released Claims, and the Parties' detailed description of the Settlement regarding the claims. Based on these papers and the Court's familiarity with this case, the Court finds that the proposed Settlement is the result of extensive, arms-length negotiations between the Parties after Class Counsel and EHC's counsel had fully investigated the claims and become familiar with the strengths and weaknesses of Plaintiff's claims. The assistance of an experienced mediator and the length of the mediation process confirms that the settlement is not collusive. Based on all these factors, the Court finds that the proposed settlement has no obvious defects and is within the range of possible settlement approval such that notice to the class members as set forth in the Settlement is appropriate.

Given the settlement's benefits, the lack of opposition from Defendant EHC, and the substantively nonexistent opposition voiced by settlement class members, Plaintiff Hecker respectfully requests that this Court give final approval to the settlement.

## II. Summary of the Settlement

The settlement resolves this matter on behalf of the following class:

> All persons located in the United States who have registered to use EHC's Premom application onto their smart phones, tablets, or laptop computers with the Android or iOS operating software systems from October 2017 through the present.

To compensate participating settlement class members, Defendant agreed to create a Gross Settlement Fund not to exceed $750,000. Participating settlement class members will receive compensation from the Net Settlement Fund, which is the remaining amount of the Gross Settlement Fund after deduction of: (a) Court approved attorneys' fees in the requested amount of $150,000 (representing 20% of the Gross Settlement Fund) and incurred litigation costs of $2,685;[1] (b) Court approved service award to Plaintiff in the requested amount of $2,000; and (c) payment of $130,108 to Kurtzman Carson Consultants, LLC ("KCC") for the settlement administration costs and expenses. Each participating settlement class member will receive a thirty-dollar ($30) cash payment. Any unused monies in the Net Settlement Fund will revert back to Defendant EHC.

### III. Class Notice, Claims, Objections, and Exclusions

This Court preliminarily approved the Settlement on August 23, 2023 (Doc. 72). The Court's Order called for a single email to be sent to all potential class members, informing them of their rights and directing them to a published website concerning the settlement.

Accordingly, on September 11, 2023, the approved class administrator – KCC – published the website www.EasyHealthcareMobileAppClassSettlement.com. The website included the Court Order, the Court approved Frequently Asked Questions, and additionally allowed users to submit a claim form, object, or opt-out. Over the next two days, between September 12, 2023 and September 13, 2023, KCC sent the Court-approved notice by email to 1,710,350 potential participating class members.

---

[1] Plaintiff's counsel has filed a separate motion for award of attorneys' fees, litigation expenses, and class representative service award.

3

Approximately one month later, the parties decided – on their own volition – to do even more to notify potential claimants of their rights. Specifically, the parties had KCC send a second email (on October 16, 2023) to potential class members, again notifying them of their rights and again directing them to the website www.EasyHealthcareMobileappClassSettlement.com. This second email was not called for by the proposed settlement terms (Doc. 68, Ex. 2) or the Court's August 27, 2023 Order (Doc. 72), yet the parties took this extra step to maximize the opportunity for Premom users to learn of the settlement and submit timely claims.

The claim filing, objection, and exclusion (opt-out) deadline was November 13, 2023. In total, fourteen thousand six-hundred and five claims were submitted (14,605), of which four-hundred and ninety-eight (498) were valid and timely (*i.e.*, the participating settlement class members). Seven (7) objections were received, and twenty-three (23) opt-outs were received.

## IV. Argument

**A.     This Court should confirm its certification of the settlement class under Rule 23 for settlement purposes.**

This Court previously certified the settlement class for settlement purposes. (Doc. 72). Because nothing has changed in the interim warranting a departure from the Court's reasoning, Plaintiff respectfully submits that this Court should confirm its certification of the settlement class for settlement purposes.

**B.     The settlement is fair, reasonable, and adequate under Rule 23(e).**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the

4

litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

Against that backdrop, the Seventh Circuit has identified five factors to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. CHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

As well, Rule 23(e) requires consideration of several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

**1. The strengths of Plaintiff's case, compared to the terms of the proposed settlement, favor approval.**

Despite facing serious risks in certifying a class for litigation purposes and on the merits, Plaintiff secured certain cash relief for participating settlement class members.[2] Indeed, absent settlement, Defendant EHC was certain to oppose the certification of any litigation class and would have opposed summary judgment for Plaintiff and/or sought summary judgment for itself.

---

[2] Defendant has also ceased using the two software development kit providers that were the subject of this lawsuit and have agreed not to share users' health information with third parties absent permission. This injunctive relief also conveys benefit to the class members. *See, In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 935 (N.D. Ill. 2022) (In data breach settlement where defendants agreed to cease collecting and transferring class members' data without express consent, court found that, "[t]hese injunctive remedies confer substantial benefits to the class.").

Discovery battles also loomed. Trial remained a distinct possibility, and likely appeals thereafter. And to be pragmatic, the Defendant's overall economic viability and ability to pay a verdict and subsequent judgment—as discussed thoroughly among the parties and mediator—played a sizable role in the parties' decision to settle for the terms outlined here.

Against this backdrop, and given the considerable risks and uncertainties at play, the $750,000 Gross Settlement Fund constitutes an acceptable result for settlement class members. The settlement provides cash relief ($30) to each participating settlement class member. This amount of money will not necessarily reimburse participating settlement class members for all of the costs of replacing their cell phone and/or router (which was Plaintiff's alleged remedy), but it will provide a meaningful offset. In comparison to other data-privacy class actions alleging relatively minimal individual damages, the payout of $30 to each participating settlement class member is reasonable. *See, e.g.*, *T.K. Through Leshore v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *20 (N.D. Ill. Mar. 25, 2022) ("[T]he recovery of $3.06 per claimant is a meaningful benefit, and, as discussed above, one comparable to similar recoveries in other privacy-related settlements."); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 934 (N.D. Ill. 2022) (data privacy settlement that paid participating class members between $27.19 to $163.13 found to be "meaningful in their own right, but they also compare favorably to the monetary relief provided in other data privacy settlements."); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) ($15 per claim in case alleging misappropriation of users' likenesses).

The payout is further reasonable because of the Defendant's precarious financial condition. *See Molinari v. Financial Asset Mgmt. Sys., Inc.*, 18-cv-01526, 2021 WL 5832788, at *6 (N.D. Ill. Nov. 22, 2021) (Finding compromise settlement fair and reasonable, particularly "in

6

light of Defendant's reportedly low net worth"); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) (citations omitted) ("But a settlement is a compromise, and courts need not—and indeed should not—reject a settlement solely because it does not provide a complete victory to plaintiffs. This is especially true when complete victory would most surely bankrupt the prospective judgment debtor.")

Moreover, it is likely that the vast majority of the settlement class members were unaware of their legal rights until receiving notice of this lawsuit, let alone knew how to begin enforcing them. Even fewer purchased a new device because of the allegations and fewer still would pay $400 to file a lawsuit in federal court only to potentially recover – at most – a couple hundred dollars. *See*, *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815-PPS-MGG, 2020 WL 5627171, at *4 (N.D. Ind. Sept. 18, 2020) ("As Judge Posner once quipped, 'only a lunatic or a fanatic sues for $30.' *Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir. 2004). And no lawyer is going to take a case so little on a contingency fee basis either."). Therefore, because of this settlement, participating settlement class members will receive cash payments they otherwise would not have likely pursued on their own, and all class members will benefit from Defendant's agreement to cease sharing users' information with third parties absent consent.

Ultimately, the purpose of this settlement was to provide compensation to class members who bought new routers and/or cell phones because of their concern that Defendant's Premom App violated their privacy. For that reason, participating settlement class members were required to submit a claim form with that required verification to participate in any recovery. Because of this, and because of the substantial class size and relatively low damages, the parties anticipated the low valid claims rate that occurred here, which is entirely reasonable given the circumstances. *See e.g., Bayat v. Bank of the West*, 2015 WL 1744342, at *6 (N.D. Cal. Apr. 15,

7

2015) (finding class settlement to be fair, adequate, and reasonable where there was only a 1.9% claim rate for damages); *Shah,* 2020 WL 5627171, at *7 ("Thus far, more than 1650 claims have been submitted. While this is a relatively small number compared to the more than 156,000 notice packets mailed, in the world of class actions it isn't an unreasonable 'take-rate.'").

2. **The likely length, complexity, and expense of continued litigation favor approval.**

There can be no doubt that additional litigation would have been costly, time-consuming, and ultimately risky. *See*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."). The complex issues encompassed by this action, together with the length of time and expense necessary to resolve this case by continued litigation, therefore weigh in favor of approval. *See*, *Vought v. Bank of Am., N.A.*, 901 F. Supp.2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

Indeed, had the parties not reached an agreement to settle this matter, significant additional litigation awaited. This includes discovery battles, fact depositions, expert submissions and depositions, a contested motion for class certification, decertification briefing, and potential dispositive and *Daubert* motions. Early on, Defendant moved to dismiss Plaintiff's cause of action on the grounds of lack of standing and lack of ascertainable damages. (Doc. 20). The Court denied Defendant's motion to dismiss, finding Plaintiff's allegations sufficient to state her claims for breach of contract and fraud. (Doc. 31). However, the underlying issues still remain to be resolved through summary judgment and/or jury trial. The immediate cash relief

afforded to the participating settlement class members now, in comparison to the length, expense, and complexity of continued litigation, favors final approval.

3. **The substantively nonexistent opposition from class members supports final approval.**

As noted, 498 class members participated in this settlement by submitting timely and valid claim forms, 23 class members "opted-out," and 7 class members submitted objections. The relatively minimal amount of registered opposition supports final approval. *See*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 937 ("The relative dearth of opposition to the settlement and the reaction of class members weighs in favor of approval as well"); *In re: Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *11 (N.D. Ill. Feb. 29, 2016) ("The small number of class members who objected or opted out further supports the fairness and reasonableness of the settlement.").

Per the terms of the settlement, the twenty-three persons who opt-ed out will not participate in the settlement and will not have their rights abridged. Moreover, when the seven submitted objections are scrutinized, they fail to support this Court denying final approval of this settlement. Per the settlement administrator, KCC, all seven of the objections were submitted electronically. Below is the *entire content* of those seven objections:[3]

| Claim ID | Stated Basis for Objection |
| --- | --- |
| 10340011401 | "I have been using this for awhile" |
| 10373123401 | "I bought a router" |
| 10572414201 | "Violation of privacy policy" |
| 10681936701 | "Used Premom for over 3 years" |
| 10872397501 | "N/a" |
| 11329743901 | "violated my Privacy Policy" |
| 10368482701 | "Privacy concerns" |

---

[3] For privacy purposes, Plaintiff has provided only the objector's Claim ID numbers. If requested by the Court, Plaintiff can provide the names, email addresses, etc.

As can be seen, none of the seven objectors lodged any sort of substantive complaint about the settlement itself. There were absolutely no complaints raised that there was anything unfair or unreasonable about the settlement amount, the class member payout amount, the attorneys' fees and costs, the service award, or the notice process. In fact, no real basis for opposing the settlement was provided at all. Thus, functionally, there were no true "objectors." This fact "further supports the fairness and reasonableness of the settlement." *Id*. *See also*, *T.K. Through Leshore*, 2022 WL 888943, at *24 ("Courts routinely overrule similarly bare objections to settlements").

4. **That Class Counsel – with significant experience litigating class actions – firmly supports the settlement weighs in favor of approval.**

Plaintiff's counsel brings substantial experience litigating and resolving collective and class actions and has obtained excellent results for their clients. (*See* Doc. 68-1). Both Plaintiff and her counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the settlement class. This further supports the fairness of the settlement. *See*, *In re TikTok, Inc.*, 617 F. Supp. 3d at 938 ("Additionally the opinion of competent class counsel supports approval of the proposed settlement."); *Edwards v. Ed. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 WL 3213277, at *6 (S.D. Ind. June 13, 2022) (citations omitted) (noting that "district courts are entitled to rely heavily on the opinion of competent counsel.").

5. **The stage of the proceedings and discovery conducted are sufficient to adequately value the claims and reach an informed agreement, further supporting final approval.**

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the settlement to further litigation. The parties engaged in written discovery targeting Defendant's privacy policies and software development kit processes and targeting Plaintiff's understanding

of the policies and alleged damages. As stated by the court in *Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013), "discovery was sufficient for effective representation, and that formal discovery would have only taken more time and resulted in the expenditure of additional funds on both sides without achieving a more attractive settlement or any other appreciable benefit." With the highly competent assistance of Mediator Schenkier, the parties were able to use the information gleaned from discovery to understand each side's respective positions and reach a reasonable compromise settlement.

C. **The remaining Rule 23(e)(2) factors support final approval.**

Finally, consideration of the factors set forth in Rule 23(e) likewise supports final approval of the settlement. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[4] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors – such as whether the relief provided to the settlement class is adequate – are addressed above in relation to the *Synfuel Techs* factors. Beyond that, Plaintiff was, throughout this matter, committed to acting in the best interests of class members, and stayed updated on the case through regular discussions with her counsel. She also reviewed the

---

[4] The only operative agreement between the parties is the Settlement Agreement. (Doc. 68-2).

11

pleadings, responded to written discovery requests, participated in mediation, and made all necessary decisions required of her in the best interests of Settlement Class Members.

In addition, there can be no doubt that the settlement was negotiated at arm's length. Indeed, the parties reached their agreement only as a result of a very long mediation process with Mr. Schenkier, a well-respected neutral with decades of experience in mediation and class actions in the Northern District of Illinois.[5] *See*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (affirming approval of class action settlement and noting, "Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated.").

Separately, Rule 23(e)(2)(D) requires that this Court confirm that a settlement treats all class members equitably. According to the Advisory Committee's Note, courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

To that end, all Settlement Class Members have the same legal claims, and each participating settlement class member thus will be treated equitably, as he or she will receive $30 each from the net settlement fund. Moreover, the release affects each settlement class member in the same way, as everyone will release the same claims. As such, this factor supports final approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members'

---

[5] *See*, https://www.jamsadr.com/schenkier/.

interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

**D. The notice program complied with Rule 23 and due process.**

Pursuant to Rule 23(e), this Court approved the proposed plan for giving notice to the settlement class members, including the Notice and Claim and Release Forms, via email, and the creation of a settlement website. (Doc. 72). To that end, the class administrator, KCC, used all reasonable efforts to provide direct notice to potential settlement class members.

Indeed, as discussed in more detail above, the parties went above and beyond the Court's Order to maximize the opportunity for Premom users to learn of the settlement and submit timely claims. Specifically, the parties had KCC send a second email to potential class members, again notifying them of their rights and again directing them to the settlement website.

As a result of these efforts, fourteen thousand six-hundred and five claims were submitted (14,605), of which four-hundred and ninety-eight (498) were valid and timely (*i.e.*, the participating settlement class members). Seven (7) objections were received, and twenty-three (23) opt-outs were received.

## V. Conclusion

Plaintiff respectfully requests, with the agreement of Defendant EHC, and without any meaningful substantive objection from any settlement class members, that this Court enter the accompanying (proposed) Final Judgment and Order of Dismissal.

Respectfully submitted,



| | |
|---|---|
| Brendan J. Donelon, N.D.Ill #43901<br>4600 Madison, Suite 810<br>Kansas City, Missouri 64112<br>Tel:   (816) 221-7100<br>Fax:   (816) 709-1044<br>brendan@donelonpc.com | Kenneth C. Apicella<br>Drost, Gilbert, Andrew & Apicella, LLC<br>4811 Emerson, Ste. 110<br>Palatine, IL 60067<br>847-934-6000<br>kca@dgaalaw.com |
| */s/ Daniel W. Craig*<br>Daniel W. Craig, N.D.Ill #6230845<br>6642 Clayton Rd., #320<br>St. Louis, Missouri 63117<br>Tel:   (314) 297-8385<br>Fax:   (816) 709-1044<br>dan@donelonpc.com | Plaintiff's Local Counsel for Service under LR 83.15 |

**Attorneys for Plaintiff**

Certificate of Service

     I hereby certify that a copy of the above and foregoing was sent on <u>November 22, 2023</u> via the Court's CM/ECF system to all counsel of record entered on this matter.

*/s/ Daniel W. Craig*
Attorney for Plaintiff